UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EVELYN L. GORDON,

               Plaintiff,

     v.

JOHN E. POTTER, Postmaster General of the
United States Postal Service,

           Defendant.

CASE NO. C07-0271-JCC

ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. No. 9), Plaintiff's Response in opposition (Dkt. No. 13), and Defendant's Reply (Dkt. No. 21). The Court has carefully considered these papers and their supporting declarations and exhibits, and the balance of relevant materials in the file. Having determined that oral argument is not necessary, the Court hereby GRANTS the motion and rules as follows.

I.      **BACKGROUND**

Plaintiff Evelyn Gordon, a female African-American former employee of the United States Postal Service ("USPS"), brings this action for race-based employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3(a), 2000e-16, and the Civil Rights Act of 1991. (Compl.

ORDER – 1

¶¶1.1, 4.1 (Dkt. No. 1).) Plaintiff claims that the USPS denied her a promotion from Manager of Personnel Services for the Seattle District to Human Resources Manager for the Seattle District because of her race and/or color.[1] Defendant filed the instant summary judgment motion, arguing that "Plaintiff's claim is without merit and should be dismissed because the USPS had a legitimate non-discriminatory reason for its decision to promote another employee in place of Plaintiff, and because Plaintiff has no evidence to meet her burden of establishing intentional discrimination." (Def.'s Mot. 2 (Dkt. No. 9).) The pertinent facts are as follows.

Plaintiff began her employment at the USPS in 1977, as a distribution clerk. (Gordon Dep. 10:21–25 (Dkt. No. 12-2 at 4).) Over the years, Plaintiff received a number of promotions and in 1993 became a Human Resources Specialist in Personnel Services. (*Id*. at 13:25–14:2.) Plaintiff remained in that position until 2003. In approximately 1995, Kathy Grosso, the Caucasian woman ultimately selected for the position Plaintiff now contends she was discriminatorily denied, became Plaintiff's supervisor. (*Id*. at 14:13–19.) In September 2003, Plaintiff became Manager of Personnel Services, an EAS[2] Level 21 position. (*Id*. at 16:13–17; Burge Decl. ¶ 3 (Dkt. No. 10 at 2).) In that position, she worked closely with Linda Smith, the Human Resources Manager for the Seattle District, an EAS Level 25 position, and claims that as a result she "gained a working knowledge of the daily requirements and responsibilities of

---

[1] In her Complaint, Plaintiff also alleged that Defendant discriminatorily denied her training opportunities. (Compl. ¶ 5.2 (Dkt. No. 1 at 3).) Defendant, in its motion, argues that this claim and any claim that she was denied "detail" opportunities must be dismissed because: (1) Plaintiff failed to timely initiate EEO counseling with respect to these claims, and therefore, she failed to exhaust her administrative remedies; (2) Plaintiff failed to establish a *prima facie* case with respect to these claims, as she did not suffer an adverse employment action; and (3) Plaintiff's claims fail on the merits, as she has no evidence that the USPS's decision not to provide her with details and/or training was related to her race or color. (Def.'s Mot. 2 (Dkt. No. 9).) Plaintiff failed to address those arguments in her Response. Pursuant to Local Rule, failure to file papers in opposition to a motion may be considered by the Court as an admission that the motion has merit. Local Rules W. D. Wash. CR 7(b)(2). Accordingly, the Court finds that Plaintiff has abandoned those claims and hereby DISMISSES them.

[2] "EAS" refers to the USPS's Executive and Administrative Schedule, which designates the pay grades/levels for non-bargaining positions. Higher levels earn higher amounts of pay and are concomitant with greater degrees of responsibility. (Burge Decl. ¶ 3 (Dkt. No. 10 at 2).)

ORDER – 2

1   Ms. Smith's position." (Compl. ¶ 4.3 (Dkt. No. 1); Information for Pre-Complaint Counseling (Dkt. No.

2   12-2 at 45).) In August 2005, Ms. Smith retired, and the USPS posted a vacancy announcement for the

3   position of Human Resources Manager. (Compl. ¶ 4.2 (Dkt. No. 1).) Plaintiff believed herself to be

4   qualified for the position, both based on her experience and as reflected by her having received numerous

5   performance awards between 1997 and 2005. (Pl.'s Resp. 1–2 (Dkt. No. 13).) Plaintiff applied for the

6   position, but on September 28, 2005, she received a letter stating that she was not selected by the Review

7   Committee as a final candidate. (*Id.* at ¶ 4.5.) No candidate was hired to fill the position for a time, and

8   on November 4, 2005, the USPS re-posted the vacancy announcement. (*Id.* at ¶¶ 4.6, 4.7.) According to

9   Dale Zinser, the then-Manager of the Seattle District and selecting official for the Seattle Human

10  Resources Manager position, the re-posting was based on his concern, after seeing the names and

11  locations of the final candidates, that the first vacancy announcement had not reached a wide enough

12  audience. (Zinser Decl. ¶¶ 1, 2, 4 (Dkt. No. 11 at 1–2).) He posits that he was "also concerned that

13  neither of the local candidates, including Ms. Gordon, had made the final list." (*Id.* at ¶ 4.) The second

14  job posting specifically stated that "[p]revious applicants need to reapply." (Gordon Dep. 36:11–12 (Dkt.

15  No. 12-2 at 20).) Plaintiff applied a second time for the position, and this time was selected as a final

16  candidate, along with five other individuals. (Compl. ¶¶ 4.7, 4.8 (Dkt. No. 1 at 2); Zinser Decl. ¶ 5 (Dkt.

17  No. 11 at 2).) Of the six final candidates, two were Black and four were Caucasian. (Final Agency

18  Decision 8 (Dkt. No. 12-2 at 83).) According to Mr. Zinser, considering each of the six candidates to be

19  qualified, he interviewed the candidates to determine which of them was best suited for the position.

20  (Zinser Decl. ¶ 5 (Dkt. 11 at 2).) Ultimately, he offered the position to Kathy Grosso, who was then

21  working as an analyst for the Human Resources Department in Denver, an EAS Level 23 position. (*Id.* at

22  ¶ 8; Burge Decl. ¶ 3 (Dkt. No. 10 at 2).)

23          On February 27, 2006, Plaintiff contacted the National EEO Investigative Services Office, seeking

24  counseling regarding her belief that her non-selection for the promotion stemmed from discrimination on

25  the basis of race, sex, color, and national origin. (Information for Pre-Complaint Counseling (Dkt. No.

26  ORDER – 3

12-2 at 49).) She filed a formal complaint on April 5, 2006. (EEO Complaint of Discrimination in the Postal Service (Dkt. No. 12-2 at 54).) In that complaint, she alleged that she "was discriminated [sic] when Manager Zinser selected a less [sic] applicant, White Female, Kathy Grosso." (*Id*. at 55.) Additionally, she claimed that she believed she was discriminated against because "there are no other African American staff members level EAS-22 and above that report directly to the District Manager." (*Id*.) Plaintiff also claimed that she was discriminated against by the Area Human Resources Manager, Patricia McGinty, based on the allegation that McGinty influenced the decision to select Kathy Grosso for the position. (*Id*. at 56.) In addition, Plaintiff alleged a hostile workplace. (*Id*.) On November 15, 2006, the EEO Investigative Services Office notified Plaintiff that, after conducting its investigation into Plaintiff's charges, it had found no discrimination. (Final Agency Decision (Dkt. No. 12-2 at 76–89).) Dissatisfied with that decision, Plaintiff filed the instant case on February 20, 2007. (Compl. (Dkt. No. 1).) The Complaint does not allege sex-based discrimination, nor does it include a hostile workplace claim. (*Id*.) In January 2007, Plaintiff resigned from the USPS to take a position with the Federal Aviation Administration. (Gordon Dep. 28:17 (Dkt. No. 12-2 at 14).)

## II.   APPLICABLE STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  If the moving party meets this initial burden, then the party opposing the motion must set forth facts showing that there is a genuine issue for trial. *See T.W. Elec. Serv.*, 809 F.2d at 630. The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "In response to a

ORDER – 4

1  summary judgment motion, . . . the plaintiff can no longer rest on . . . mere allegations, but must set forth

2  by affidavit or other evidence specific facts, . . . which for the purposes of the summary judgment motion

3  will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); FED. R. CIV. P.

4  56(e). If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the

5  moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24

6  (1986).

7  **III.   ANALYSIS**

8       Pursuant to Title VII of the Civil Rights Act, "[a]ll personnel actions affecting employees or

9  applicants for employment . . . in the United States Postal Service . . . shall be made free from any

10  discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). "Failure

11  to promote is a common manifestation of disparate treatment." *McGinest v. GTE Serv. Corp.*, 360 F.3d

12  1103, 1122 (9th Cir. 2004). "In the summary judgment context, the plaintiff bears the initial burden to

13  establish a prima facie case of disparate treatment." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir.

14  2007) (citing *Chuang v. Univ. of Cal. Davis., Bd. of Trs.*, 225 F.3d 1115, 1123 (9th Cir. 2000)). "If the

15  plaintiff succeeds in showing a prima facie case, the burden then shifts to the defendant to articulate a

16  'legitimate, nondiscriminatory reason' for its employment decision." *Id.* (citing *Chuang*, 225 F.3d at

17  1123–24). If the defendant carries its burden, "the burden then shifts back to the plaintiff to raise a triable

18  issue of fact that the defendant's proffered reason was a pretext for unlawful discrimination." *Id.* (citing

19  *Chuang*, 225 F.3d at 1124).

20       **A.       Plaintiff's Prima Facie Case**

21       To establish a discriminatory failure to promote, Plaintiff must show that she: (1) belongs to a

22  racial minority; (2) that she applied and was qualified for a job for which the employer was seeking

23  applicants; (3) that, despite her qualifications, she was rejected; and (4) that, after her rejection, the

24  position remained open and the employer continued to seek applicants from persons of complainant's

25  qualifications. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "At the summary

26  ORDER – 5

judgment stage, the 'requisite degree of proof necessary to establish a prima facie case . . . is minimal and does not even need to rise to the level of a preponderance of the evidence.'" *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)). Plaintiff has shown that she is an African-American individual who applied for a position for which she was qualified; Dale Zinser admits that he considered all of the six final candidates to be qualified for the Human Resources Manager position. (Zinser Decl. ¶ 5 (Dkt. No. 11 at 2).) Plaintiff has shown that despite her qualifications, she was rejected (twice) for the job, and that after her first rejection, the position remained open and Defendant continued to seek applicants with Plaintiff's qualifications for the job.[3] Simultaneous with her second rejection, the position was offered to a Caucasian individual. Defendant does not dispute, and the Court finds, that Plaintiff has met her initial burden of establishing a *prima facie* case.

### B. Defendant's Burden to Articulate a Legitimate, Nondiscriminatory Reason for Not Promoting Plaintiff

"Once established, the *prima facie* case creates a rebuttable 'presumption that the employer unlawfully discriminated against the employee.'" *Lyons*, 307 F.3d at 1112 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). "The burden of production then shifts to the employer 'to articulate a legitimate, nondiscriminatory reason for the plaintiff's rejection.'" *Id.* (quoting *Warren v. City of Carlsbad*, 58 F.3d 439, 442 (9th Cir. 1995)). "To meet this burden, 'the defendant must clearly set forth, through the introduction of admissible evidence,' reasons for its employment decision which, if believed by the trier of fact, would support a finding that the employment action was not a result of unlawful discrimination." *Noyes*, 488 F.3d at 1169 (quoting *Burdine*, 450 U.S. at 255). Defendant puts forth two legitimate nondiscriminatory reasons for promoting Ms. Grosso over Plaintiff.

---

[3]It appears that of the six final candidates selected after the second posting of the job vacancy, only one of those candidates, a Black female Manager of Personnel Services from the Grand Rapids District, was, like Plaintiff, in an EAS Level 21 position. (Final Agency Decision 8 (Dkt. No. 12-2 at 83).) The other four candidates were in higher EAS positions, ranging from 22 to 25. (*Id.*)

ORDER – 6

1    First, Defendant states that Mr. Zinser's selection from amongst the final candidates was

2 grounded most significantly on the candidates' interview performance. (Def.'s Mot. 7 (Dkt. No. 9).)

3 After evaluating their interviews, "Mr. Zinser had two top candidates in mind for the position, although

4 one subsequently withdrew and the second was not selected after Mr. Zinser received negative feedback

5 from the applicant's supervisor." (*Id*. at 8.) Mr. Zinser next chose Ms. Grosso over Plaintiff and the other

6 remaining candidate[4], because:

7    [a]lthough Ms. Grosso's interview performance had not been exceptional and was not as
     good as the interview performance of the two applicants discussed above, he found it to
8    be superior to the interview performance of Plaintiff. This was based on a number of
     factors, including the fact that Mr. Zinser felt Plaintiff gave canned answers and did not
9    voice her own opinions as much as what she thought he wanted to hear. In addition,
     Plaintiff's answers were not as in-depth as Ms. Grosso's, and were somewhat short-
10   sighted. Plaintiff also was not able to answer at least one of Mr. Zinser's follow-up
     questions, and she placed less of an emphasis on the importance of supporting Operations.
11   Finally, Mr. Zinser felt that Ms. Gordon was less prepared for the interview.

12 (*Id*.)  If believed by the trier of fact, Mr. Zinser's comparison of Ms. Grosso's and Plaintiff's interviews

13 would support a finding that the employment action was not a result of unlawful discrimination.

14    Second, Defendant points to Ms. Grosso's superior qualifications for the position:

15   including Ms. Grosso's broad base of prior experience within the Postal Service and broad
     knowledge of issues relevant to the Human Resources Department; Ms. Grosso's
16   familiarity with the HR Department in the Western Area Office, an Office with which the
     Seattle District HR Manager had frequent contact; the initiative Ms. Grosso had shown in
17   taking an analyst position at the Western Area Office; the fact that Ms. Grosso was in a
     higher position than Plaintiff and had supervised her for a number of years; the fact that
18   Ms. Grosso had been the Personnel Manager in the Seattle District for eight years, while
     Plaintiff had held the position for only three years; and Ms. Grosso's completion of the
19   Bolger Academy HR Developmental Program training course, which Plaintiff had not
     attended.

20
21 (*Id*.) The Court finds that all of these reasons for Defendant's employment decision, if believed by the

22 trier of fact, would support a finding that the promotion of Ms. Grosso over Plaintiff was not a result of

23 unlawful discrimination.

24 //

25    [4]One of the six final candidates withdrew before the interview.

26 ORDER – 7

**C.   Plaintiff's Burden to Show that Defendant's Reasons Were a Pretext for Unlawful Discrimination**

Because Defendant satisfies its burden to articulate a nondiscriminatory reason for its promotion decision, the burden shifts back to Plaintiff to "show that the 'reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (quoting *Chuang*, 225 F.3d at 1123–24 (internal quotation omitted)).[5] An employer's explanation may be "unworthy of credence" if "it is internally inconsistent or otherwise not believable[.]" *Noyes*, 488 F.3d at 1170. The law is presently unclear in this Circuit[6] whether indirect, or circumstantial, evidence must be "specific" and "substantial," or "whether a lesser amount should suffice." *Davis*, 520 F.3d at 1091. However, Plaintiff neither introduces evidence upon which a reasonable fact finder could find that a discriminatory reason more likely motivated the employer, nor introduces evidence upon which a reasonable fact finder could conclude that the USPS's articulated reasons for hiring Ms. Grosso over Plaintiff are unworthy of credence. The Court will address each of Plaintiff's contentions, in turn, below.

---

[5]Defendant incorrectly states the standard as requiring Plaintiff to prove both that the Defendant's reason was false and that discrimination was the real reason. (Def.'s Mot. 9 (Dkt. No. 9) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).) The Ninth Circuit has explained that this misreading of *St. Mary's Honor Center* "misconstrues the burden on [the plaintiff] to raise a triable issue of fact regarding pretext. We reiterate that at the summary judgment stage, a plaintiff may raise a genuine issue of material fact as to pretext via (1) direct evidence of the employer's discriminatory motive or (2) indirect evidence that undermines the credibility of the employer's articulated reasons." *Noyes*, 488 F.3d at 1170–71.

[6]The Ninth Circuit recently noted that "[i]n *Cornwell* [*v. Electra Central Credit Union*, 439 F.3d 1018, 1030 (9th Cir. 2006)] we relied on the Supreme Court's decision in [*Desert Palace, Inc. v.*] *Costa* [539 U.S. 90 (2003)] to conclude that 'in the context of summary judgment, Title VII does not require a disparate treatment plaintiff relying on circumstantial evidence to produce more, or better, evidence than a plaintiff who relies on direct evidence.' . . . We have also held in numerous other cases since *Costa* that a plaintiff's circumstantial evidence of pretext must be 'specific' and 'substantial.'" *Davis*, 520 F.3d at 1091 n.6 (citing *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1038 (9th Cir. 2005)) (brackets added).

ORDER – 8

**1.    The Allegation that Mr. Zinser Intentionally Avoided Participating in the EEO Investigation**

Plaintiff argues that "[i]nitially, the evidence allows for the argument that Mr. Zinser intentionally avoided participating in the EEO investigation." (Pl.'s Resp. 19 (Dkt. No. 13).) Plaintiff points to the fact that Mr. Zinser did not complete an affidavit during the EEO investigation as evidence that he would not willingly articulate the reasons for his promotion of Ms. Grosso over Plaintiff. Plaintiff argues that therefore, Mr. Zinser's reasons were likely illegitimate.

There is simply no evidence to support this inference. The EEO investigator's notes show that the first request for an affidavit was delivered to Mr. Zinser's business address on May 26, 2006, the Friday before the Memorial Day weekend holiday. (EEO Investigative Report (Dkt. No. 15 at 12).) On June 2, the following Friday, Mr. Zinser retired from the USPS. (*Id.*) Mr. Zinser testified that he personally did not see the document that was mailed to his business address just before his retirement. (Second Zinser Decl. ¶ 2 (Dkt. No. 20 at 1).) The first set of questions Mr. Zinser claims to have actually received was mailed to his home after his retirement, on July 28, 2006. After inquiring whether he would be compensated for his time in answering the lengthy set of questions, and whether he could have access to material from the file that might assist him in answering the questions, which he estimated would take him about two days, (Zinser Dep. 62:19–22 (Dkt. No. 16 at 32)), Mr. Zinser was advised by the EEO investigator that the USPS would not compensate him and that he could not have any materials from the file. (*Id.* at ¶ 3; EEO Investigative Report (Dkt. No. 15 at 12).) Given that Mr. Zinser was no longer employed by the USPS, and no compensation was available, Mr. Zinser informed the investigator that he would not provide an affidavit. (EEO Investigative Report (Dkt. No. 15 at 12).)

Even if Mr. Zinser did, in fact, personally receive the request for an affidavit in the days before his retirement, and simply failed to complete the paperwork at that time, the Court does not find that shows that a discriminatory reason more likely motivated him to hire Ms. Grosso over Plaintiff, or that his articulated reasons for doing so are unworthy of credence.

ORDER – 9

## 2.      The Reasons Mr. Zinser Articulated for Making His Decision

Plaintiff next argues that Mr. Zinser's subjective reasons for choosing Ms. Grosso over Plaintiff are not credible. In this vein, Plaintiff attacks Mr. Zinser's credibility, arguing that he had trouble remembering, during his deposition, the specific examples of poor interview responses by Plaintiff, and argues that Plaintiff herself would not characterize her interview performance as poor. Plaintiff also points to the testimony of Linda Smith, Plaintiff's former supervisor, who was not present during the interview, that she was surprised by Mr. Zinser's observations regarding Plaintiff's interview performance, based on her own experience with Plaintiff. (Smith Decl. ¶ 9, 11 (Dkt. No. 19 at 3–4).)

Plaintiff's argument ignores that Mr. Zinser did provide examples, during his deposition, of Plaintiff's interview responses that formed the basis for his conclusion that Ms. Grosso was a better qualified candidate for the position than Plaintiff. (*See*, *supra*, Section III.B; Zinser Dep. 77:5–78:6; 94:3–98:20; 102:16–103:20; 105:19–25 (Dkt. No. 17 at 4–5, 9–13, 17–18, 20).) Mr. Zinser stated that he felt that Plaintiff's answers "were a little more canned, weren't as in-depth, didn't use more of her own thinking process, and I thought she was telling me what I wanted to hear." (Zinser Dep. 94:4–6 (Dkt. No. 17 at 9).) For example, to the question, "If you could change just one thing in the USPS today, what would it be? Why?", Plaintiff's response appears to have been that she would have "Operations be a little more understanding of what HR does. For instance, LWOP reports. Looks like 50's are not cut." (Interview Question Notes from Plaintiff's Dec. 30, 2005 Interview (Dkt. No. 14 at 31).) Mr. Zinser testified that he thought that "being a little more understanding of what HR does is kind of a minute thing to change in the entire postal system. So her thinking was on the short side instead of the long side." (Zinser Dep. 94:14–18 (Dkt. No. 17 at 9).) Mr. Zinser also explains that he asked Plaintiff how she would effectuate that change, and that Plaintiff's response was "[m]ore along the lines 'I'm not sure. I don't know. It just needs to be done.'" (*Id*. at 77:17–18.) Mr. Zinser did not think Plaintiff gave a "very adequate response" to that follow-up question. (*Id*. at 77:14–15.) For another example, Mr. Zinser cites Plaintiff's answer to the question, "How would you handle an anonymous complaint of Sexual

ORDER – 10

Harassment," which, according to Mr. Zinser's notes was, "Have to investigate who they are talking about. Send out a team. Go from there. Look at results of investigation. Obligation." (Interview Question Notes from Plaintiff's Dec. 30, 2005 Interview (Dkt. No. 14 at 31).) Mr. Zinser testified that:

> I purposely included an anonymous complaint, which means you don't know who you're talking to. And part of that explanation from [Plaintiff] was to investigate it, and that's the canned response. We always investigate every allegation of sexual harassment. The question is how do you go about it and where do you begin? I think a little bit of what [Ms. Grosso] did here was, you know, at least tried to tell the person that it's important and, you know, it needs to be investigated, where else are we going to go with it. . . . [Plaintiff] was ready to investigate that right away, it appears to me, and send a team out. Sometimes a team isn't always the correct response."

(Zinser Dep. 105:1–15 (Dkt. No. 17 at 20).)

Additionally, the Court does not find that Ms. Smith's evaluation of Plaintiff's interview performance as compared to Ms. Grosso's raise a question of material fact as to whether Mr. Zinser's reasons are unworthy of credence, given that Ms. Smith was not present at either interview. Moreover, Plaintiff's own subjective assessment of her performance cannot raise a genuine issue of material fact. *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) ("an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact."). The Court notes that during her deposition, Plaintiff stated that she was not able to remember any of the questions Mr. Zinser asked her or any of the specifics of what was said during the hour-long interview. (Gordon Dep. 38:2–7 (Dkt. No. 12-2 at 22).)

Plaintiff also argues that Mr. Zinser's favorable comparison of Ms. Grosso's qualifications as compared to Plaintiff's are not worthy of credence. (Pl.'s Resp. 21 (Dkt. No. 13).) Specifically, Plaintiff criticizes Mr. Zinser's conclusions that Ms. Grosso's experience as a Human Resources analyst at the Western Area office made her more qualified than Plaintiff, or that Ms. Grosso's training at the Bolger Academy made her more qualified, or that Ms. Grosso's having been Plaintiff's supervisor made her more qualified. Plaintiff also argues that Mr. Zinser ignored Plaintiff's superior qualifications, such as her ability to handle "Shared Services" and her experience with Labor Relations.

ORDER – 11

1    As Defendant points out, "[t]he Government has never contended that Plaintiff was not qualified

2    for the position, just that Mr. Zinser felt she was less suited for the job than Ms. Grosso, based primarily

3    on interview performance, in combination with a number of other factors." (Def.'s Reply 2 (Dkt. No.

4    21).) Additionally, Plaintiff does not argue that Ms. Grosso was not qualified for the job, only that

5    Plaintiff was more qualified. Consistent with Title VII, "the employer has discretion to choose among

6    equally qualified candidates, provided the decision is not based upon unlawful criteria. " *Burdine*, 450

7    U.S. at 259. It is undisputed that Ms. Grosso was in a higher EAS Level position as compared with

8    Plaintiff; had shown initiative by taking the analyst position in Denver after working in Seattle for a

9    number of years; had attended an HR professional development training course that Plaintiff did not

10   attend; had cultivated a familiarity with the Human Resources Department in the Western Area Office, an

11   office with which the Seattle District HR Manager had frequent contact; had supervised Plaintiff for a

12   number of years; and had been the Personnel Manager in the Seattle District for eight years, while

13   Plaintiff had held the position for only three years. On the basis of this evidence, it appears that Plaintiff

14   and Ms. Grosso were, at a minimum, equally qualified for the position. Indeed, the Review Committee

15   that screened applicants for the position, which forwarded names to Mr. Zinser, short-listed Ms. Grosso

16   both times the job vacancy was posted. (Sept. 23, 2005, Memo to Mr. Zinser from Review Committee

17   (Dkt. No. 12-2 at 43).)

18   ### 3.   The Allegation that Mr. Zinser Had a Pattern of Not Promoting Black
     ### Candidates Into Positions That Directly Reported to Him

19
20   Plaintiff argues that Mr. Zinser had a pattern of not promoting Black candidates into positions

21   that directly reported to him.[7] (Pl.'s Resp. 23 (Dkt. No. 13).) The Court is not persuaded by this

22   argument, given the fact that Mr. Zinser selected an African-American female, Linda Smith, for the same

23

24   [7]Plaintiff cites in this Section the Zinser deposition transcript at page 17; however, Plaintiff did not
     include page 17 in her exhibits. Plaintiff also cites the "Smith Dec., ¶", but does not identify the paragraph
25   number to which she refers. The Court has reviewed the entire Smith Declaration but is not able to
     discern which paragraph supports Plaintiff's contention.

26   ORDER – 12

1    position Plaintiff was later denied. (Def.'s Mot. 2 (Dkt. No. 9).) For approximately ten years, Ms. Smith

2    reported directly to Mr. Zinser. (*Id.* at 2–3.) Additionally, Plaintiff testified that Mr. Zinser hired an

3    African-American diversity coordinator, Carol Peeples-Proctor, who directly reported to Mr. Zinser for

4    approximately ten years. (Gordon Dep. 73:4–25 (Dkt. No. 12-2 at 38).) Plaintiff cites Mr. Zinser's

5    testimony that he selected seven out of his then ten direct reports, and that of those seven, only one

6    belonged to a minority group—an Asian male. (Pl.'s Resp. 23 (Dkt. No. 13).) However, Mr. Zinser

7    testified that the predecessor to one of those direct reports, who Mr. Zinser also selected, was African-

8    American. (Zinser Dep. 125:2–7 (Dkt. No. 17 at 31).)

9         Plaintiff points to no examples to demonstrate Mr. Zinser's alleged pattern of not promoting

10   African-American candidates, nor does she cite any data reflecting whether qualified African-American

11   candidates applied for the positions occupied by Mr. Zinser's seven direct reports. Plaintiff notes that Mr.

12   Zinser testified that, despite his duty to diversify his direct reports, Mr. Zinser did not consider whether

13   he could diversify his direct reports through his selection of the HR manager. (Pl.'s Resp. 23 (Dkt. No.

14   13).) However, Mr. Zinser also testified that his first concern was to identify the person best qualified for

15   the job, (Zinser Dep. 124:20–22 (Dkt. No. 17 at 30)), and there is ample evidence to support Mr.

16   Zinser's testimony that he believed Ms. Grosso to be more qualified than Plaintiff for the position. Given

17   Plaintiff's failure to show any pattern of discriminatory conduct, and Defendant's evidence that he has in

18   the past promoted African-American candidates, including for the position at issue here, Plaintiff's

19   argument on this account fails.

20                    **4.    The Absence of Black Managers**

21        Plaintiff states that the absence of Black managers may be viewed as circumstantial evidence of

22   pretext. (Pl.'s Resp. 23 (Dkt. No. 13).) As Plaintiff points out, the Ninth Circuit has held that an

23   employer's "permissive response to harassing actions undertaken by coworkers and supervisors,

24   combined with the absence of black supervisors and managers in the workplace, . . . is circumstantial

25   evidence of pretext." *McGinest*, 360 F3d at 1123; *see also Davis*, 520 F.3d at 1092 (stating that, in the

26   ORDER – 13

1  context of Title VII claims involving disparate treatment on the basis of sex, "[w]e have held that the

2  absence of female supervisors is circumstantial evidence of pretext."). In *Davis*, the Court found it

3  probative of pretext that the record contained "no evidence that there were ever any female supervisors."

4  520 F.3d at 1092.

5      There is no such evidence here, where it is undisputed that the retiring employee who previously

6  held the Manager position that Plaintiff sought was African-American. In addition, Plaintiff cites no

7  evidence to support her assertion that there was an absence of Black managers.

8      In sum, considering cumulatively the circumstantial evidence presented by Plaintiff, the Court

9  finds that Plaintiff fails to raise an issue of material fact that Defendant's articulated reasons for hiring Ms.

10  Grosso instead of Plaintiff are unworthy of credence. Accordingly, the Court hereby GRANTS

11  Defendant's motion for summary judgment and DISMISSES Plaintiff's claims with prejudice.

12  **IV.    CONCLUSION**

13      For the foregoing reasons, the Court hereby GRANTS Defendant's Motion for Summary

14  Judgment (Dkt. No. 9). The Clerk is INSTRUCTED to CLOSE the case.

15      DATED this 21st day of May, 2008.

16

17

18  John C. Coughenour
    UNITED STATES DISTRICT COURT

19

20

21

22

23

24

25

26  ORDER – 14